IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No.:

**JOSEPH PERARO,** an individual

    Plaintiff,

v.

**LARIMER COUNTY,** a governmental entity
**JONATHAN ANDERSON**, an individual
**TAYLOR CAREY**, an individual,
**ANDREA MERIANO**, an individual,
    Defendants.

---

### COMPLAINT AND JURY DEMAND

---

COMES NOW Plaintiff Joseph Peraro by and through his counsel, Baumgartner Law, L.L.C., to respectfully submit this Complaint against the Defendants and allege and aver as follows:

### JURISDICTION AND VENUE

1. This action is brought pursuant to 42 U.S.C. §1983, §1988 and the First, Fifth and Fourteenth Amendments to the United States Constitution as well as the Americans With Disabilities Act. Jurisdiction is founded upon 28 U.S.C. §1331 (federal question), §1343(a)(3) and (4) (civil rights), and the aforementioned statutory and constitutional provisions.

2. Venue is proper in the United States District Court for the District of Colorado pursuant to 28 U.S.C. §1391(b) because the Defendants are citizens and residents of Colorado, and the events, acts, and/or omissions giving rise to this action occurred in Colorado.

## PARTIES

3. Plaintiff, Joseph Peraro ("Joseph"), is and was at all relevant times a citizen of the State of Colorado, currently residing in Larimer County, Colorado. Joseph is the father of S.P., with whom he was deprived of a family relationship to which he has a Constitutional right.

4. Defendant Larimer County is and was at all relevant times a government municipality.

5. Defendant Jonathan Anderson is and was at all relevant times a citizen of the State of Colorado, and employed by Larimer County, a Colorado entity.

6. Defendant Taylor Carey is and was at all relevant times a citizen of the State of Colorado, and employed by Larimer County, a Colorado entity.

7. Defendant Andrea Meriano is and was at all relevant times a citizen of the State of Colorado, and employed by Larimer County, a Colorado entity.

## GENERAL ALLEGATIONS

8. Plaintiff incorporates by reference herein all preceding paragraphs set forth in this Complaint.

9. Joseph and Sesha Peraro are divorced and share custody of two children: S.P. and W.P.

10. S.P. has been diagnosed with Oppositional Defiance Disorder and suffers from other mental health conditions.

11. During late 2014 and early 2015, S.P. began to exhibit signs of abuse at her mother's house and began to make outcries of abuse to Joseph and Kacie Morgan.

12. On October 1, 2014, Joseph made a report to Adams County Child Protective Services after picking up his children from Sesha Peraro's home. S.P. did not have adequate clothes for the weather and there was a bruise on W.P.'s face. This report did not result in any change to the

schedule of parenting time or custody agreement with the children between Joseph and Sesha.

13. In May 2015, Sesha Peraro took S.P. to the Community Reach Center and reported the beginning of what would be a pattern of concerning behaviors such as mood swings, suicidal threats, and aggression. During this same month S.P. was placed in full time custody with Joseph.

14. For the next two years, S.P.'s behaviors would cause her to be placed into inpatient treatment and had negative effects on her schoolwork and social life.

15. Joseph made appropriate calls to the Larimer County Department of Human Services Child Protection Services ("CPS"). However, CPS failed to take intervening actions, despite being offered direct physical evidence of visible injuries to S.P. Despite being cooperative, CPS would later say they felt Joseph, at this early stage, was uncooperative because he wanted to consult an attorney for advice on how to interact with CPS. This finding by CPS of being 'uncooperative' is completely false and was only made for a retaliatory purpose since Joseph had in fact been cooperating fully and they (CPS) internally equate seeking legal advice as being uncooperative.

16. Joseph immediately placed S.P. in therapy at the Parent Child Interactive Center, where she was diagnosed with several disorders, including Oppositional Defiance Disorder.

17. During 2016, Joseph observed a significant increase in defiant and violent behaviors from S.P.

18. Joseph reached out to the Parent Child Interactive Center, and was referred to a specialist, Dr. Gary Ranch.

19. On October 21, 2016, S.P. made an allegation that Joseph's wife pushed her into a wall.

20. CPS immediately investigated this allegation, and Joseph and his wife cooperated fully and openly, allowing CPS. investigators full access to their home and children.

21. CPS became angry at Joseph when he insisted that Dr. Ranch be allowed to participate in forming a "safety plan" for S.P. This is the first time that CPS exhibited anger at being questioned regarding their authority.

22. Despite their anger, the caseworker noted in her report that she believed that S.P. was "not being honest," and the investigation was closed as "unfounded," and Joseph's household being safe, the children being appropriately cared for.

23. Over the next several months, Larimer County CPS caseworkers documented an emerging pattern of false reporting by S.P.

24. Over the same period, CPS continually declined to investigate documented incidents of abuse of S.P. that occurred at S.P.'s mother's house, despite Joseph's repeated pleas for help. The only explanation for this failure was that the family had been "red-flagged" as a high conflict case.

25. On April 8, 2017, Joseph took S.P. to the Banner Fort Collins Medical Center Emergency Room for suicidal statements, outbursts, and running away, and the fact that Joseph had found a razor blade hidden in her room. S.P. was taken into inpatient psychiatric care at that time and transferred to Highlands Behavioral Health inpatient facility.

26. From April 8, 2017 to April 19, 2017, S.P. was a patient at Highlands Behavioral health inpatient facility. On April 19, 2017 she was transferred to Devereux Cleo-Wallace Behavioral Health inpatient facility.

27. From April 19, 2017 to April 21, 2017, S.P. was a patient at Devereux Cleo-Wallace Behavioral Health inpatient facility. Joseph requested S.P. enter Devereaux after being discharged from Highlands Behavioral Health in order to keep her under professional care. S.P. was then discharged and sent home to live with Joseph.

28. In May 2017, Joseph and his wife, Kacie Morgan, began working with Amy Smith Edwards through Summit Stone Health to provide psychological services and support to S.P.

29. While there was some mild improvement in S.P.s mental health there were still multiple incidents where she would randomly burst out in angry fits, make up stories about other people, and threaten suicide.

30. On August 14, 2017, Joseph took S.P. to the Banner Fort Collins Medical Center Emergency Room citing concerns over what he believed to be credible suicidal statements, threats of violence towards others, outbursts of anger and rage, running away, and a fear for the safety of other minor children in the home. S.P. was again taken into inpatient psychiatric care.

31. From August 15, 2017 to August 19, 2017, S.P. was a patient at CSU Jefferson Hills Behavioral Health inpatient facility. She was then discharged and sent home to live with Joseph.

32. Although Joseph would have preferred S.P. to live with him so he could be an involved parent and help her work toward psychiatric stability and good mental health he knew S.P.'s problems were becoming too big for him to handle alone.

33. Joseph began looking for long-term psychiatric care facilities to help with his daughter's serious mental health disorders.

34. Joseph took S.P. to Summit Stone Health where she was assessed for long-term residential care. Summit Stone Health met with S.P. on September 1, 2017 and issued a report denying her long-term residential care on September 22, 2017.

35. From September 21, 2017 to September 29, 2017, S.P. would again become a patient at Devereux Cleo-Wallace Behavioral Health inpatient facility due to more outbursts of rage and suicidal statements. Here, a doctor reported witnessing S.P. hallucinating and hearing voices.

36. Despite this, on September 29, 2017, she was discharged and sent home once again to live with Joseph.

37. Shortly after her discharge from Devereaux in September of 2017, S.P. became a patient at CSU Jefferson Hills Behavior Health inpatient facility from October 5, 2017 to October 17, 2017 where doctors once again reported that she was suffering hallucinations. S.P. was discharged and released into Sesha Peraro's custody on October 17, 2017.

38. Despite all of her problems S.P. was attending school more often and improving in her studies while living with Joseph.

39. When S.P. would stay with Sesha Peraro there were noticeable declines in attendance rates at school, poorer performance, and the mental health condition would decline to the point of needing to be re-institutionalized.

40. Joseph reasonably believed that whenever S.P. stayed with Sesha Peraro there was something happening at that home causing his daughter to deteriorate mentally.

41. On October 18, 2017, Joseph filed a motion for contempt against Sesha Peraro for picking S.P. up from CSU Jefferson Hills in defiance of their court-ordered parenting plan. CSU Jefferson Hills had not been authorized to release S.P. to Sesha Peraro.

42. Also, on October 18, 2017, Joseph contacted the Thornton Police Department and arranged for them to assist him in picking up S.P. from Sesha Peraro's house. Once in the car, S.P. placed a seat belt around her neck and threatened to kill herself and was subsequently taken to the Medical Center of Aurora and kept on a mental health hold.

43. In the past when S.P. was released from inpatient care and into Joseph's custody, she would not have outbursts of rage or threaten suicide.

44. In October of 2017, Joseph had S.P. evaluated for eligibility into a day treatment care facility through Colorado Access insurance, which resulted in a denial for services.

45. Throughout the years-long process of S.P.'s treatment and care, Joseph was very involved

as a parent. He disagreed with the way the Larimer County Department of Human Services was handling S.P.'s case. He felt that S.P. needed long-term residential care in order to treat her severe mental illnesses and prevent her from harming herself, as she had tried to do on so many occasions.

46. Joseph had expressed many times to the Larimer County Department of Human Services caseworkers Taylor Carey and Andrea Meriano as well as social caseworker manager Jonathan Anderson, that he disagreed with continuing this pattern of outpatient care for S.P. until she made an attempt and had to be hospitalized again. He wanted S.P. to be given long-term residential treatment so she could stabilize long-term.

47. The caseworkers and their manager did not listen to Joseph's concerns and he chose, as the primary parent in S.P.'s life, that the Department of Human Services should no longer be involved in her treatment and care, and that he felt she would be better off without their intervention. At this time, the coordination with the Department was entirely voluntary.

48. Joseph was deeply frustrated because Taylor Carey, Andrea Meriano, and Jonathan Anderson could never explain why they felt long-term residential treatment was not necessary despite the continued pattern of intermittent institutionalization that only resulted in short-term gains.

49. Joseph specifically informed caseworker Andrea Meriano that he saw no need for the Department of Human Services to be involved further, and that he did not feel comfortable speaking to her without a lawyer. Andrea Meriano, and her colleagues, Taylor Carey and Jonathan Anderson, became angry that Joseph invoked his right to a lawyer before speaking to them again.

50. On November 1, 2017, Larimer County, Colorado, by and through Taylor Carey, Andrea Meriano, and Jonathan Anderson, filed a dependency and neglect action concerning S.P. against Joseph. There were no incidents or actions of S.P. trying to hurt herself or others between Joseph invoking his right to a lawyer and the Department filing an unsubstantiated dependency and neglect suit. There was never any evidence to support such a filing because it was planned retaliation against Joseph for asserting his fifth amendment right to counsel and refusing to speak

with the Department of Human Services caseworkers further without an attorney present.

51. After this filing, S.P. was taken away and placed into foster care where her mental health conditions significantly worsened.

52. Joseph was dismissed from the retaliatory proceedings initiated by Taylor Carey, Andrea Meriano and Jonathan Anderson when Assistant County Attorney Arthur Spicciati filed an unopposed motion to dismiss. This motion was filed on December 20, 2019 and was signed by Assistant County Attorney Arthur Spicciati and Guardian Ad Litem Mary Davis.

53. The action was dismissed after the Department did finally agree to placing S.P. in long-term residential care, which significantly improved her mental health. In effect, once the complaint was dismissed the County had to admit that Joseph had been right all along.

54. However, the effects of this dependency and neglect action are still being felt by the Peraro family to this day, including S.P. S.P. has been in and out of facilities over the last three years and has not been successful on short-term care. She has been denied admission to psychiatric hospitals because she has run away from short-term psychiatric hospitals so many times. She now has to go to medical hospitals for care. Every time she returns home from institutionalized care, she runs away and hurts herself. Most recently she got out of psychiatric care and stabbed herself in the abdomen in late July 2020. S.P. had to have exploratory surgery in early September 2020 because she put holes in her intestines from the stabbing. S.P. has spent most of the summer and fall of 2020 in a medical hospital. At the time of this filing, she is still a patient there. S.P. has suffered immeasurable pain and harm because of Taylor Carey, Andrea Meriano, and Jonathan Anderson's retaliatory actions that resulted in the illegal separation of a daughter from her father who knew best how to care for her.

55. As of the time of this filing, S.P. has been accepted into a locked, inpatient, long-term psychiatric care program in Aurora, Colorado. She is awaiting an opening to be transferred there.

## CLAIMS FOR RELIEF

## CLAIMS UNDER FEDERAL LAW, 42 U.S.C. §1983

56. Plaintiff incorporates by reference herein all preceding paragraphs set forth in this Complaint.

57. The First Amendment of the United States Constitution guarantees freedom of speech and expression and prohibits the abridgement of such speech or expression. The First Amendment protections apply to government actors.

58. The Fifth Amendment to the United States Constitution guarantees to all citizens that the government shall not deprive any person of life, liberty or property without due process of law. The Fourteenth Amendment of the United States Constitution applies the first amendment to the state governments.

## FIRST CLAIM FOR RELIEF
### Violation of First and Fourteenth Amendment Right to Free Speech
### (By Plaintiff Joseph Peraro Against All Defendants)

59. Plaintiff incorporates by reference herein all preceding paragraphs set forth in this Complaint.

60. Plaintiff alleges and believes that at all relevant times, Defendants Taylor Carey, Andrea Meriano, and Jonathan Anderson were employees of Larimer County acting in accordance with county policy and custom.

61. The First Amendment of the United States Constitution guarantees freedom of speech and expression and prohibits the abridgement of such speech or expression. *See* U.S. Const. amend. I.

62. The Fourteenth Amendment of the United States Constitution applies the first amendment to the state governments. *See* U.S. Const. amend. XIV, § 1.

63. As the Supreme Court states, the purpose of the First Amendment is "to protect unpopular individuals from retaliation" by the government. *See* McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 357 (1995).

9

64. The Supreme Court has held that the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for exercising their First Amendment right and speaking out. *See* Crawford-El v. Britton, 523 U.S. 574, 592, (1998).

65. The general elements of a First Amendment retaliation claim are that the plaintiff participated in a constitutionally protected speech, that they faced adverse actions, and that those adverse actions were substantially motivated by the speech. *See Mount Healthy Bd. of Ed. v. Doyle, 429 U.S. 274, 287 (1977).* *See also* Hartman v. Moore, 547 U.S. 250, 260 (2006).

66. Joseph engaged in constitutionally protected speech. In October 2017, Joseph exercised his first amendment right to free expression by expressing to the Larimer County Department of Human Services that he did not want to work with them because they did not address his concerns for his daughter S.P. and they disagreed about the need for long-term residential treatment. He informed them that he did not want to speak with caseworkers any further until he had a chance to consult with an attorney.

67. On November 1, 2017, Defendants filed a dependency and neglect action against Joseph which was later determined to be meritless. This dependency notice was filed by defendants Taylor Carey, Andrea Meriano, and Jonathan Anderson out of anger and vindictiveness towards Joseph's expressed feelings of dissatisfaction with the government – not for any legitimate purposes in regard to the well-being of S.P.

68. This retaliatory conduct caused injury to Joseph by denying him of his constitutionally protected relationship with his child, S.P. These types of retaliatory actions would certainly chill a person of ordinary firmness because it is incredibly expensive, time consuming and intimidating to challenge illegal government actions. Thus, people of ordinary firmness would likely refrain from expressing dissatisfaction toward employees of departments like CPS because it will be easier to "go along to get along" and out of the legitimate fear their child would be taken away and end up not being able to see or speak to their child which is the nightmare of parents the world over.

69.     Plaintiff alleges and believes that the adverse actions were substantially if not solely motivated by his speech. He annoyed and angered the Defendants with his zealous advocacy on behalf of his child. He was vocal about his dissatisfaction with the results of their efforts on S.P.'s behalf and wanted to pursue different treatment which they did not approve of. The fact that the dependency and neglect action was unsuccessful, and Joseph was dismissed from the case twice indicates that there was no underlying support for a dependency and neglect action against him in the first place. It is clear that the Defendants were motivated by his speech and took retaliatory action against Joseph to silence him.

70.     Joseph had a first amendment right to criticize the Department of Human Services for their treatment of his child. He had every right to express his dissenting opinions on the care she required and their treatment of her case to that point. When he disagreed with caseworkers and expressed to them that he felt their choices were not the right choices for his child, he was labeled as aggressive and non-compliant. *See* Trails Reports: Referral/Assessment Summary from Caseworker Chelsea Mitchell Dated 5/16/2017; Referral/Assessment Summary from Angela Bartges Dated 10/11/2017; Referral/Assessment Summary from Nikole Jones Dated 10/13/2017, **Exhibit 1**.

71.     For his expressions, he was silenced through retaliation; brought to court for a dependency and neglect action which he was later removed from. *See* Court Order Dismissing Joseph Peraro and Kacie Morgan From Dependency and Neglect Action 17JV442, **Exhibit 2**.

72.     Rather than deal with Joseph and work with him to find a solution for his family, Defendants chose to silence his expression by retaliating against him and removing his child from his life completely, ensuring he could no longer be a part of her treatment or care. Caseworker Andrea Meriano worked alongside caseworker Taylor Carey to open an unfounded dependency and neglect action in November 2017 in order to silence Joseph and did so with approval from social caseworker manager Jonathan Anderson. All parties were at all relevant times employees of the Larimer County Department of Human Services and were supervised by the county. *See* Trails System Report By Andrea Meriano Dated 10/31/2017, **Exhibit 3**.

73. The actions of Andrea Meriano, Taylor Carey, and Jonathan Anderson were taken in conjunction with and under the supervision of Larimer County Department of Human Services. The retaliatory dependency and neglect case against Joseph was initiated and carried out by Larimer County through the actions of Defendants Andrea Meriano, Taylor Carey, and Jonathan Anderson.

74. The actions taken by the Defendants were in direct violation of Joseph's first amendment right to free speech and expression. This dependency and neglect action removed his child from his care completely and robbed him of a relationship with her. The Defendants' actions have directly and proximately caused damages to Joseph, which include, but are not limited to, the loss of his relationship with his daughter, loss of reputation, and loss of money spent on legal fees to defend himself against the dependency and neglect action; in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
### Violation of Fifth and Fourteenth Amendment Right to Familial Association
### (By Plaintiff Joseph Peraro Against All Defendants)

75. Plaintiff incorporates by reference herein all preceding paragraphs set forth in this Complaint.

76. Plaintiff alleges and believes that at all relevant times, Defendants Andrea Meriano, Taylor Carey, and Jonathan Anderson were employees of Larimer County acting in accordance with county policy and custom.

77. The Fifth Amendment to the United States Constitution guarantees to all citizens that the government shall not deprive any person of life, liberty, or property without due process of law. *See* U.S. Const. amend. IV.

78. The Fourteenth Amendment has its own due process clause applying the same due process rights from the Fifth Amendment to states. *See* U.S. Const. amend. XIV, §1.

79. The Fourteenth Amendment Due Process Clause contains a substantive component that provides citizens with "heightened protection against government interference with certain

fundamental rights and liberty interests". *See Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).

80. Under the Fourteenth Amendment, parents have a liberty interest in the custody, care and upbringing of their children. *See Troxel v. Granville*, 530 U.S. 57, 65 (2000). *See also Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (there is "a fundamental liberty interest of natural parents in the care, custody and management of their child").

81. It is well-established law that parents have a liberty interest in familial association with their children. S*ee Malik v. Arapahoe County Dept. of Social Services*, 191 F.3d 1306, 1315 (10th Cir. 1999).

82. Removal of a child from the custody of their parent requires a pre-deprivation notice and hearing except in extraordinary and uncommon circumstances where "some valid governmental interest is at stake that justifies postponing the hearing until after the event". See *Spielman v. Hildebrand*, 873 F.2d 1377, 1385 (10th Cir. 1989).

83. Joseph is the father of three children and one step-child. His children and his family are at the root of his life and liberty. As any loving father would put it, his children are not just his life: they are what he stays alive for. The targeted attack from the Larimer County Department of Human Services on Joseph deprived him of what lies at the heart of his life and liberty: his right to have a family. The actions of the Defendants deprived him of a relationship with his daughter S.P., a relationship he has been unable to rebuild to this day.

84. Joseph expressed to caseworkers Andrea Meriano and Taylor Carey that he disagreed with the Larimer County Department of Human Services' actions in providing care for S.P. He felt S.P. needed long-term residential treatment because she would get out of short-term inpatient psychiatric care and then have another episode of suicidal or aggressive behavior and end up hospitalized again.

85. Joseph's involvement in his daughter's care came to an abrupt end because the Defendants

chose to take action against him without cause. Andrea Meriano requested that a dependency and neglect action be opened in Larimer County Court on November 1, 2017. She did so with the support of Jonathan Anderson, Taylor Carey, and Larimer County. From that point on, Joseph was kept from his child cruelly and without cause in violation of his right to familial association pursuant to the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution.

86. As a direct and proximate result of the actions of the Defendants, Joseph suffered damages to include, but not limited to, the loss of his familial relationship with his daughter, loss of reputation, and loss of money spent on legal fees to defend himself against the dependency and neglect action; in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
**Malicious Prosecution**
**(Plaintiff against Defendants Andrea Meriano, Taylor Carey, and Jonathan Anderson)**

87. Plaintiff incorporates by reference herein all preceding paragraphs set forth in this Complaint.

88. The elements of a malicious prosecution are that the defendant contributed to bringing a prior action against the plaintiff; that the prior action ended in favor of the plaintiff; there was no probable cause; malice; and damages. See *Hewitt v. Rice*, 154 P.3d 408, 411 (Colo. 2007). See also *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013).

89. The facts alleged in this malicious prosecution claim arise out of a common nucleus of operative facts that gave rise to the Constitutional violations listed in this Complaint. As such, supplemental jurisdiction is appropriate pursuant to 28 U.S.C. §1367.

90. Defendant Andrea Meriano worked in conjunction with defendant Taylor Carey to bring a dependency and neglect action against Joseph. They did so under the direct supervision of and with approval from Jonathan Anderson. This action proceeded from November 1, 2017 through April 17, 2018 and was re-commenced in December 2018 and did not end until December of 2019.

91. Plaintiff alleges and believes that there was no probable cause to bring a dependency and neglect action against him. Joseph never abused nor neglected his child S.P. He was a zealous and passionate advocate for his daughter in a system that repeatedly failed her. Despite two attempts to villainize him through a dependency and neglect action, Larimer County, the Larimer County Department of Human Services, Jonathan Anderson, Taylor Carey, and Andrea Meriano failed to show any probable cause for a dependency and neglect action against Joseph. He was dismissed from the action on December 20, 2019.

92. Plaintiff alleges and believes that malice was a driving force behind caseworkers Andrea Meriano and Taylor Carey's decision to bring this false dependency and neglect action and behind caseworker manager Jonathon Anderson's approval of the action. It is clear that Joseph and the Larimer County Department of Human Services disagreed about how best to aid S.P. and what treatment would be most beneficial to her. Joseph was a thorn in the sides of Defendants Jonathon Anderson, Taylor Carey, and Andrea Meriano and they chose to remove him through unfounded legal process.

93. The sickening actions of the Defendants caused Joseph Peraro to suffer damages to include, but not limited to, the loss of his familial relationship with his daughter, loss of reputation and loss of money spent on legal fees to defend himself against the malicious dependency and neglect action; in an amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF
### Punitive Damages for Violation of Constitutional Rights under 42 U.S.C. §1983
### (Plaintiff against all Defendants)

94. Plaintiff incorporates by reference herein all preceding paragraphs set forth in this Complaint.

95. At all times, Defendants Jonathon Anderson, Taylor Carey, and Andrea Meriano were employees of and under the direct authority and supervision of Larimer County. Plaintiff alleges and believes that these actions were aligned with Larimer County policy at the time.

96. Caseworkers Taylor Carey and Andrea Meriano, by and through the permission and

supervision of social caseworker manager Jonathan Anderson, intentionally used the court system to silence Joseph and stop him from exercising his first amendment rights and also in violation of his fifth amendment right to due process, both respectively applied through the fourteenth amendment. Their actions were not just unlawful; they were morally repugnant. They were annoyed with Joseph, exhausted of his passionate advocacy on behalf of his ill child: and instead of doing their duty to S.P. and working with Joseph, they collectively chose to separate them through a vindictive and inexcusable invocation of legal process for which they had no grounds.

97. The Defendants intentionally used their power over Joseph in an unconstitutional and unlawful manner. Defendants Jonathon Anderson, Taylor Carey, and Andrea Meriano were empowered to file a retaliatory action by Larimer County, and were allowed to use their position as county officials to deprive Joseph of his well-established constitutional rights. The effects of their actions cannot be undone - they have done immense damage to Joseph, his family, reputation, and finances. They have done damage to his children by unjustly destroying his relationship with them. He has lost a priceless relationship with his daughter S.P.; one that he has been unable to rebuild to this day.

98. Accordingly, Larimer County, Jonathan Anderson, Taylor Carey, and Andrea Meriano should be required to pay Joseph's additional damages, over and above any actual and compensatory damages, to punish them for their evil intent, willful and wanton conduct, and/or for acting with deliberate, reckless, and/or callous indifference toward Joseph Peraro, and to deter other state employees and officials from engaging in such conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that this Court enter judgment in favor of the Plaintiff on his claims and against the Defendants, jointly and/or severally, as follows:

a. compensatory damages in an amount that will fully and fairly compensate the Plaintiff for their respective injuries, damages, and losses, pursuant to 42 U.S.C. §1983;
b. punitive damages pursuant to federal law as punishment and deterrence against the commission of future such conduct;
c. pre- and post-judgment interest;

d.  reasonable attorneys' fees, expert witness fees, and the cost of this action, pursuant to 42 U.S.C. §1988 and any other applicable federal or state law;

e.  any other relief this Honorable Court deems proper and just.

**PLAINTIFF DEMANDS TRIAL TO A JURY ON ALL ISSUES SO TRIABLE**

Dated this 1st day of December, 2020.

                                                              Respectfully submitted,
                                                              BAUMGARTNER LAW, L.L.C.
*Original signature on file at Baumgartner Law, L.L.C.*

                                                             *s/ S. Birk Baumgartner*
S. Birk Baumgartner, #47829
Baumgartner Law, LLC
300 E. Hampden Ave., Ste. 401
Englewood, CO 80113
Phone: (720) 626-9418
Fax: (720) 634-1018
birk@baumgartnerlaw.com

Plaintiffs' Address:
c/o Baumgartner Law, L.L.C.
300 E. Hampden Ave., Ste. 401
Englewood, CO 80113

## VERIFICATION

I, Joseph Peraro, do swear and affirm that the statements given in this Verified Complaint are true and correct to the best of my information and belief.

_____
Joseph Peraro

STATE OF COLORADO  )
                                              ) ss.
COUNTY OF Laramer  )

SUBSCRIBED AND SWORN TO before me on this 6 day of January, ~~2020~~ 2021.

Name: Weston Johnson
Notary Public
My Commission Expires on: 8-1-2022

**WESTON DEAN JOHNSON**
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20184030786
MY COMMISSION EXPIRES AUG 1, 2022

18